*Holbrook v. Trivago N.V.*

**UNITED STATES COURT OF APPEALS**
**FOR THE SECOND CIRCUIT**

**SUMMARY ORDER**

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007 IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 16th day of December, two thousand nineteen.

PRESENT:
> DENNIS JACOBS,
> SUSAN L. CARNEY,
> MICHAEL H. PARK,
> > *Circuit Judges.*

_____

DHARMANAND SHETTY,

> *Plaintiff-Appellant,*

ANTHONY HOLBROOK, JORGE OLIVA,
INDIVIDUALLY AND ON BEHALF OF ALL
OTHERS SIMILARLY SITUATED,

> *Plaintiffs,*

> v.                                                     No. 19-0766

TRIVAGO N.V., NATIONAL CORPORATE
RESEARCH, LTD., J.P. MORGAN SECURITIES LLC,
MORGAN STANLEY & CO. LLC, ALLEN &
COMPANY LLC, MERRILL LYNCH, PIERCE, FENNER &
SMITH INCORPORATED, CITIGROUP GLOBAL
MARKETS INC., DEUTSCHE BANK SECURITIES INC.,
COWEN AND COMPANY, LLC, GUGGENHEIM

SECURITIES, LLC, GOLDMAN SACHS & CO., LLC,

   *Defendants-Appellees,*

ROLF SCHROMGENS, AXEL HEFER,

   *Defendants.*[*]

_____

| | |
|---|---|
| FOR PLAINTIFF-APPELLANT: | CHARLES H. LINEHAN (Robert V. Prongay & Lesley F. Portnoy, *on the brief*), Glancy Prongay & Murray LLP, Los Angeles, CA. |
| FOR DEFENDANTS-APPELLEES: | JARED GERBER (Lewis J. Liman, *on the brief*), Cleary Gottlieb Steen & Hamilton LLP, New York, NY (*for* trivago N.V.). |
| | Peter E. Kazanoff & Sara A. Ricciardi, Simpson Thacher & Bartlett LLP, New York, NY (*for* J.P. Morgan Securities LLC, Morgan Stanley & Co. LLC, Allen & Company LLC, Merrill Lynch, Pierce, Fenner & Smith Incorporated, Citigroup Global Markets Inc., Deutsche Bank Securities Inc., Cowen and Company, LLC, Guggenheim Securities, LLC, & Goldman Sachs & Co. LLC). |
| | Joanna A. Diakos & Anthony P. Badaracco, K&L Gates LLP, New York, NY (*for* National Corporate Research, Ltd.). |

   Appeal from a judgment of the United States District Court for the Southern District of New York (Buchwald, *J.*).

_____

[*] The Clerk of Court is directed to amend the caption as above.

**UPON DUE CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment entered on February 27, 2019, is **AFFIRMED**.

Dharmanand Shetty appeals from the judgment of the United States District Court for the Southern District of New York (Buchwald, *J.*) granting the motion of trivago N.V. ("Trivago") and the motion of the other defendants[1] to dismiss, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, Shetty's claims brought under sections 11 and 15 of the Securities Act of 1933 (the "Securities Act"), 15 U.S.C. §§ 77k & 77o, and sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78j(b) & 78t(a), as well as Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5.[2] We assume the parties' familiarity with the underlying facts, procedural history, and arguments on appeal, to which we refer only as necessary to explain our decision to affirm.

This Court "review[s] the grant of a motion to dismiss *de novo*, accepting as true all factual claims in the complaint and drawing all reasonable inferences in the plaintiff's favor." *Fink v. Time Warner Cable*, 714 F.3d 739, 740-41 (2d Cir. 2013).[3] A complaint survives a motion to dismiss only if it "state[s] a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

1.    *Section 11 Claim*

Section 11 of the Securities Act imposes liability on a security's issuer or underwriter when that security's registration statement or prospectus contains "a material omission in contravention of an affirmative legal disclosure obligation." *Litwin v. Blackstone Grp.*, 634

---

[1] On appeal, the defendants are J.P. Morgan Securities LLC, Morgan Stanley & Co. LLC, Allen & Company LLC, Merrill Lynch, Pierce, Fenner & Smith Incorporated, Citigroup Global Markets, Inc., Deutsche Bank Securities Inc., Cowen & Company, LLC, Guggenheim Securities, LLC, Goldman Sachs & Co. LLC, and National Corporate Research, Ltd. ("NCR").

[2] NCR also moved pursuant to Rule 12(b)(5) of the Federal Rules of Civil Procedure to dismiss the Consolidated Amended Class Action Complaint (the "Complaint") for insufficient service of process. In dismissing the Complaint on its merits, the District Court also held that the Rule 12(b)(5) argument failed. NCR does not appeal that aspect of the judgment.

[3] Unless otherwise noted, when quoting cases, all internal quotation marks and citations are omitted.

F.3d 706, 715 (2d Cir. 2011). Item 303 of Regulation S-K ("Item 303") creates such an affirmative legal obligation to disclose "any known trends or uncertainties that have had or that the registrant reasonably expects will have a material favorable or unfavorable impact on net sales or revenues." 17 C.F.R. § 229.303(a)(3)(ii); *see also id.* § 229.303 instruction 3 (explaining disclosures should "focus specifically on material events and uncertainties known to management that would cause reported financial information not to be necessarily indicative of future operating results or of future financial condition").

On appeal, Shetty contends that Defendants omitted from Trivago's Registration Statement[4] two advertising-related events or uncertainties required to be disclosed under Item 303. In brief, Trivago initially maintained a policy of placing ads only for those advertisers whose "landing page"—the webpage to which a Trivago user is transferred after clicking on a hotel offer—conformed to Trivago's user experience standards.[5] App'x at 18-19. In December 2016, Trivago implemented a new policy—the "Relevance Assessment"—under which Trivago displayed ads from advertisers with low-quality landing pages, but imposed a penalty: assigning them low prominence in Trivago search results. App'x at 33. Advertisers could avoid the penalty either by conforming their landing pages to meet Trivago's standards or by agreeing to pay Trivago more for each user click. App'x at 33. According to Shetty, Trivago should have disclosed (1) that, before the December 16, 2016 initial public offering (the "December IPO"), Trivago allowed its largest advertiser—priceline.com ("Priceline")—to place ads even though it violated the landing-page policy; and (2) the likely revenue impact for Trivago of implementing the Relevance Assessment.

---

[4] As used here, the term "Registration Statement" refers to a collection of documents Trivago filed with the SEC ahead of its December 16, 2016 initial placement offer. These are: a Form F-1 filed November 14, 2016 (amended December 5, 2016); a Form F-6 filed December 6, 2016; and a prospectus filed December 16, 2016.

[5] The Complaint explains that "[t]he simpler and the more aesthetically pleasing the landing page, the more likely a user is to book the hotel." App'x at 31. Trivago thus "has an interest in controlling the look and feel" of landing pages, because better landing pages result in higher conversion rates. *Id.* Since advertisers pay each time a user clicks through on one of their offers, higher conversion rates theoretically mean that advertisers should be willing to pay more for each click, which in turn would translate into increased revenue for Trivago. *Id.*

4

Substantially for the reasons articulated by the District Court, we conclude that Defendants satisfied their legal disclosure obligations. At most, the Complaint's allegations suggest a possible attenuated connection between Priceline's landing-page-policy violations and Trivago's bottom line—and even then, the Complaint is silent as to the extent of the financial impact. Thus, the Complaint does not permit a court to plausibly and reasonably infer that Priceline's landing-page-policy violations before the December IPO had any negative financial impact at all, let alone a material impact on Trivago's overall revenue such that Item 303 would require disclosure. *Compare Panther Partners Inc. v. Ikanos Commc'ns, Inc. (Panther Partners I)*, 347 F. App'x 617, 620 (2d Cir. 2009) (finding allegations that defendant knew "some" of its products were defective to be insufficient to establish that the "scope or magnitude" of the problem was material), *with Panther Partners Inc. v. Ikanos Commc'ns, Inc. (Panther Partners II)*, 681 F.3d 114, 121-22 (2d Cir. 2012) (holding proposed amended complaint *did* state a claim because new allegations that "the defect rate was, in essence, 100% for all [of the product] sold to clients representing 72% of revenues" were adequate to demonstrate a problem of sufficient magnitude to trigger Item 303's disclosure requirement).

Nor does the Complaint permit the inference urged by Shetty that Defendants concluded, or that it was reasonably foreseeable to them, that implementing the Relevance Assessment would have a material impact on Trivago's revenue. To the contrary, Shetty's allegations suggest that Defendants expected advertisers to conform their landing pages to the stated standards to avoid paying the penalty, supporting the inference that the expected impact on revenue, if any, would be minimal. *See, e.g.*, App'x at 322-23 (Compl. ¶ 62), 38-39 (Compl. ¶ 79), 40 (Compl. ¶ 82), 59 (Compl. ¶ 144); *see also* App'x at 71-72 (Compl. ¶ 178) (alleging that Trivago's motive for implementing Relevance Assessment was to incentivize advertisers to conform their landing pages); App'x at 379 (Feb. 24, 2017 Q4 2016 Earnings Call), 405 (May 15, 2017 Q1 2017 Earnings Call).[6] The fact that advertisers—including

---

[6] A "complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference"; in addition, if a "complaint relies heavily upon [a document's] terms and effect," that document is rendered "integral" to the complaint and may be considered on a motion to dismiss. *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002); *see also* Fed. R. Civ. P. 10(c).

Priceline—may have been unable or unwilling to immediately conform their landing pages to meet Trivago's standards, and thus ended up paying significant penalty fees for several months, merely highlights the benefits of hindsight; it does not mean that outcome was reasonably foreseeable when the Relevance Assessment was implemented. *See Hutchison v. Deutsche Bank Sec. Inc.*, 647 F.3d 479, 488-90 (2d Cir. 2011) (finding complaint insufficient where it alleged impairment "long after the IPO," and failed to allege that a "dollar amount of impairment[] was known to [defendant] at the time of the IPO").

  2.  *Section 10(b) and Rule 10b-5 Claim*

To state a claim under Section 10(b) and Rule 10b-5(b), a plaintiff must plead: "(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation." *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 267 (2014) (internal quotation marks omitted). Unlike Shetty's Section 11 claim, his Section 10(b) claim must "satisfy the heightened pleading requirements" imposed by Rule 9(b) of the Federal Rules of Civil Procedure and the Private Securities Litigation Reform Act (the "PSLRA"). *Anschutz Corp. v. Merrill Lynch & Co.*, 690 F.3d 98, 108 (2d Cir. 2012). Under Rule 9(b), a plaintiff "must (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Id.* (internal quotation marks omitted) The PSLRA further requires securities fraud complaints to (1) "specify each misleading statement," (2) "set forth the facts on which [a] belief that a statement is misleading was formed," and (3) "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." *Id.* (alteration in original) (internal quotation marks omitted).

Shetty fails to carry his burden. He first argues that Defendants made two actionable material misstatements when (1) on the February 24, 2017 Q4 2016 Earnings call, Trivago

---

Accordingly, in assessing the Complaint's sufficiency, we consider the transcripts of earnings calls, which the Complaint relies upon and quotes heavily.

attributed Q4 2016 revenue growth to "many small things," rather than "one big thing" (namely, the Relevance Assessment); and (2) in the Q1 and Q2 2017 Results Press Releases, Trivago explained that revenue growth during those periods was "largely driven" by the Relevance Assessment, or that the Relevance Assessment was "one of the drivers" (as opposed to the Relevance Assessment being the only driver of growth). Appellant's Br. 30-33 (emphasis omitted). Neither argument has merit. To begin, the Complaint is devoid of any factual allegations suggesting that the Relevance Assessment actually drove Q4 2016 revenue at all, let alone that it was the sole driver. (Significantly, the Relevance Assessment would have been in place for at most one month of the fourth quarter.) As discussed above, even if it later became evident to Trivago and others that the Relevance Assessment had been the primary driver of Q4 2016 revenue, the Complaint's allegations do not support the inference that Trivago made any material omissions when it announced its Q4 2016 results.

Shetty's assertion that statements acknowledging that an increase in the revenue Trivago generated from users clicking through from Trivago's platform to an advertiser's website were false is hardly persuasive. In its public statements, Trivago adequately conveyed the sum and substance of the Relevance Assessment. The distinction that Shetty relies on between Trivago's characterization of the growth ("largely" or "one of," on one hand) and his own ("but-for," on the other) is not meaningful. *See Karasick v. ProShares Tr. (In re ProShares Tr. Sec. Litig.)*, 728 F.3d 96, 103-04 (2d Cir. 2013) (finding unpersuasive plaintiffs' "efforts to find a meaningful distinction between 'diverge significantly' and 'actual loss'"); *see also Lindsay v. Morgan Stanley (In re Morgan Stanley Info. Fund Sec. Litig.)*, 592 F.3d 347, 365 (2d Cir. 2010) ("Disclosure is not a rite of confession or exercise of common law pleading." (brackets and internal quotation marks omitted)).

Although, in light of the reasons that we discuss above and affirm, it did not need to reach the issue, the District Court additionally determined that Shetty inadequately pleaded *scienter*. We agree. To begin, Shetty relies on allegations that Trivago "knew facts or had access to information suggesting that [its] public statements were not accurate." *ECA & Local 134 IBEW Joint Pension Tr. of Chi. v. JP Morgan Chase Co.*, 553 F.3d 187, 199 (2d Cir. 2009) (internal quotation marks omitted). The rule in this Circuit is that, "[w]here plaintiffs

7

contend defendants had access to contrary facts, they must specifically identify the reports or statements containing this information." *Novak v. Kasaks*, 216 F.3d 300, 309 (2d Cir. 2000). Shetty's failure to do so is sufficient to end the inquiry. Even assuming that Shetty was not required to identify particular reports or statements, the District Court correctly observed that Defendants made a "cascade of disclosures," Special App'x at 55, that identified the Relevance Assessment and warned investors that any revenue effects associated with its implementation likely were temporary, *see* App'x at 38-39 (Compl. ¶¶ 78-79), 59 (Compl. ¶ 146), 61 (Compl. ¶ 154); *see also, e.g.*, App'x at 378 (Feb. 24, 2017 Q4 2016 Earnings Call), 405 (May 15, 2017 Q1 2017 Earnings Call). In light of those disclosures and warnings, no court could reasonably conclude that the Complaint makes a strong showing of conscious misbehavior or recklessness.[7] *See Rombach v. Chang*, 355 F.3d 164, 176-77 (2d Cir. 2004) (reasoning that allegations of fraudulent intent were "weakened" by defendants' "disclosure of certain financial problems"); *cf. Novak*, 216 F.3d at 309 ("[A]llegations that defendants should have anticipated future events and made certain disclosures earlier than they actually did do not suffice to make out a claim of securities fraud.").

3.      *Secondary Claims*

The Complaint also asserts separate claims under section 15 of the Securities Act and under section 20(a) of the Exchange Act. Both of those claims are "necessarily predicated on a primary violation of securities law." *Rombach*, 355 F.3d at 177-78. Shetty failed to establish a primary violation of the securities laws; thus, he failed to state a claim under section 15 or section 20(a).

\* \* \*

---

[7] In addition, these disclosures preclude Shetty from contending that Trivago concealed or minimized the downside risk of implementing the Relevance Assessment, such that, when Priceline (and other advertisers) began to comply with the landing page rules, investors were injured. *See Halperin v. eBanker USA.com, Inc.*, 295 F.3d 352, 361 (2d Cir. 2002) (explaining that no claim for misrepresentation lies where "allegedly omitted facts were either disclosed or implied").

For the reasons set forth above, the District Court's dismissal of the Complaint is **AFFIRMED**.

FOR THE COURT:

Catherine O'Hagan Wolfe, Clerk of Court